OPINION OF THE COURT
Bellacosa, J.
We agree with the Appellate Division that plaintiff Technicon is not entitled to be provided a defense by defendants insurers because the pollution exclusion from coverage provision in the applicable primary comprehensive general liability insurance policy is unambiguously plain and operative. The alleged wrongdoing in the underlying personal injury action, in which Technicon was sued and for which, as plaintiff in this action, it seeks a declaration of rights against the insurers, consisted of intentional, long-term discharge of toxic *72 waste chemicals from Technicon’s manufacturing plant into Frontera Creek in Humacao, Puerto Rico. The United States Environmental Protection Agency has also importuned Technicon to participate and lead in the clean-up. As a matter of law, the conduct at issue was not an "accidental” occurrence which would qualify as an exception to the pollution exclusion from coverage provision of the policy.
In February 1985, several residents of Ciudad Cristiana Urbanization, a residential community adjacent to the plant, sued Technicon in Superior Court, Puerto Rico. The action seeks damages for personal injuries allegedly suffered from exposure to toxic chemicals intentionally discharged by Technicon into the nearby waterway. The complaint alleges in part:
"1. For several years and up to the present defendant * * * Technicon Electronics Corp. [has] been discharging into Front-era Creek * * * toxic wastes which include heavy metals such as mercury [emphasis added].
* * *
"4. The discharge by defendants of toxic wastes * * * has been made and is being made knowingly” (emphasis added).
A month later, the United States Environmental Protection Agency (EPA) notified Technicon by letter that it might be potentially responsible for the clean-up costs in the Frontera Creek pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 USC § 9601 [CERCLA]).
In a certified answer, submitted by Technicon’s personally retained counsel, addressed to the residents’ lawsuit, Technicon conceded that it had intentionally, albeit lawfully in its view, discharged production wastes from the manufacture of its blood sample analysis machines into a creek which flowed into Frontera Creek.
Technicon then notified insurers Centennial and Atlantic Mutual of the personal injury action and demanded that the insurers, as providers of Technicon’s primary comprehensive general liability (CGL) insurance, undertake its defense. When they refused, Technicon sought a declaratory judgment against them and 15 other named insurance companies, averring that the claims asserted against Technicon in the Puerto Rico action and in the EPA letter are covered by the insur *73 anee policies and that, therefore, the insurers are obligated to defend and indemnify it.
The insurers answered that their respective CGL policies exclude from coverage any loss resulting from the discharge or dispersal of toxic chemicals or pollutants, the exception to that exclusion from coverage being only if the discharge is "sudden and accidental”.
On cross motions, Supreme Court granted Technicon’s motion for partial summary judgment concluding that the pollution exclusion from coverage was not operative. The Appellate Division reversed, granted partial summary judgment to the insurers, and declared "that the pollution exclusion clause is unambiguous * * * and operates to relieve [the insurers] of any obligation to defend or indemnify Technicon” (141 AD2d, at 130). That court also rejected Technicon’s argument that the EPA demand letter instituted "a suit” which also triggered the insurers’ obligation to defend. Technicon’s motion for leave to appeal to this court was granted with the customary certified question.
The dispositive issue is whether Technicon’s concededly intentional discharges into the waterway were both sudden and accidental within the meaning of the exception to the pollution exclusion from coverage. If the discharge is not both sudden and accidental, the exception is inapplicable and, therefore, the pollution exclusion from coverage provision is operative. We conclude that the occurrence was not accidental within the meaning of the policy provision.
The waste discharges cannot be viewed as "accidental” within the meaning of the exception to the pollution exclusion clause in this case where the gravamen of the underlying complaint against Technicon, the insured, in the personal injury action is that it knowingly discharged the pollutants into the waterway.
The duty to defend insureds — long recognized as broader than that to indemnify — is derived from the allegations of the complaint and the terms of the policy. If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend (Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, 669-670). Moreover, when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, *74 further, that the allegations, in toto, are subject to no other interpretation” (International Paper Co. v Continental Cas. Co., 35 NY2d 322, 325).
In this case, the insurers referenced their policy obligation to damages "caused by an occurrence”. An "occurrence” is then defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured”. Thus, under the "occurrence” definition of this policy, any unintended or unexpected damage will be covered as an "accident” without regard to the nature of the event causing it. Intended or expected damage is excluded from coverage.
This general coverage provision is followed by an express pollution exclusion provision which narrows the type of event for which coverage is afforded and, in turn, by an exception to that exclusion which would revive the coverage. The pollution exclusion provision and its exception were included in Technicon’s liability insurance policies pursuant to a statutory mandate (see, Insurance Law former § 46 [13], [14]; L 1971, ch 765), the mandatory aspect of which has been repealed (see, Insurance Law § 1113, L 1982, ch 856). The pollution exclusion clause provides: "This insurance does not apply * * * to bodily injury or property damage arising out of discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental” (emphasis added).
The first question, then, is whether the pollution exclusion is applicable at all. To be so, the complaint with respect to which coverage is sought must allege a discharge, dispersal, release or escape of a toxic or hazardous waste which has actually resulted in pollution. If so, the damage from the discharge of the hazardous waste is excluded from coverage by the express exclusion clause, despite qualifying as an "occurrence” within the general terms of the policy. Here, the plaintiffs residents in the underlying complaint clearly asserted Technicon discharged pollutants that, as alleged, resulted in harm to the environment. The next question is whether the exception at the tail of the exclusion provision saves the coverage by neutralizing the exclusion clause. For *75 that, the discharge, dispersal, release or escape must be "sudden and accidental”. Since the exception is expressed in the conjunctive, both requirements must be met for the exception to become operative. Stated conversely, discharges that are either nonsudden or nonaccidental block the exception from nullifying the pollution exclusion.
Technicon argues that its discharge of toxic waste was "accidental” because it allegedly did not intend to cause environmental harm or the specific injuries claimed by the plaintiffs in the Puerto Rico action. That argument fails because the pollution exclusion clause, by its own terms, does not distinguish between intended or unintended consequences of intentional discharges; rather, it excludes from coverage liability based on all intentional discharges of waste whether consequential damages were intended or unintended. If the discharge was intentional, the disqualifying exclusion clause is operative and there is no coverage because the exception clause lacks its springboard. Inasmuch as the underlying complaint alleges and Technicon’s answer concedes that its dumping of wastes was deliberate, the occurrence cannot be "accidental” within the meaning of th°e policy. To accept Technicon’s interpretation of the pollution exclusion clause would otherwise render that clause meaningless in context.
A word is necessary about Allstate Ins. Co. v Klock Oil Co. (73 AD2d 486) because it is strongly relied on by Technicon. The case is clearly inapposite. The complaint in Klock alleged unintentional accidental discharge. The court held that as long as the escape of gasoline was alleged to be accident, it could be sudden even though the discharge was undetected for a substantial period of time (id., at 488). The court then added, "if the resulting damage could be viewed as unintended by the fact finder, the total situation could be found to constitute an accident * * * and therefore within the coverage afforded by Allstate” (73 AD2d, at 489). Technicon’s reliance on Klock and the quoted dictum are unavailing because the court was not there addressing the discharge of pollutants — the critical policy language here — but rather the resulting damage argumentation construct. McGroarty v Great Am. Ins. Co. (36 NY2d 358), used by Klock in that connection, is a case which did not even concern the pollution exclusion clause but rather turned on the term "accident” in the context of a policy covering property damage "caused by an accident”. The policy in McGroarty made the fulcrum of coverage rest on the injurious results, not the precipitating discharge acts themselves. In *76 sharp contrast, the pollution exclusion clause at issue here is directed at the polluting act itself — the discharge, dispersal or escape.
Similarly unpersuasive is Technicon’s claim that as long as the discharge was legal, according to its belief and answering allegations, the pollution exclusion provision is displaced from its policy. The plain language of the exclusion clause does not support this interpretation. It makes no mention of the legality of the discharge. Notably, when the statute mandating the inclusion of the pollution exclusion provision in all general liability insurance contracts was added to the Insurance Law in 1971 — Technicon’s policy was acquired during that period— opponents of the legislation stressed that even those who "observe the laws and rules scrupulously and discharge materials from his facility only in strict conformity with the concentrations, quantities or conditions set forth in the laws, regulations and permits * * * [are] stripped * * * of [the] ability to insure against this event” (see, Mem in opposition, NYS Dept of Commerce, Governor’s Bill Jacket, L 1971, ch 765; see also, Mem in opposition, Niagara Mohawk Power Corporation, Governor’s Bill Jacket, L 1971, ch 765). The change in policy, reflected in the statutory elimination of the mandatory inclusion of the clause, is unavailing to Technicon’s position.
Having decided that Technicon’s intentional discharge of toxins into the waterway was not "accidental” within the meaning of the relationship of the exception clause to the pollution exclusion provision, we need not rule on the conjunctive prerequisite bringing the exception into play — suddenness —because it would be superfluous here.
Likewise, we need not decide whether the EPA demand' letter constituted the institution of a "suit” qualifying for duty to defend coverage as that claim by Technicon is equally subsumed within the primary analysis and holding.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question not answered as unnecessary.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, etc.