924 F.2d 39
 32 ERC 1637, 21 Envtl. L. Rep. 20,862
 OGDEN CORPORATION, Avondale Industries, Inc. and Connell
Limited Partnership, Plaintiffs-Appellants,
v.
The TRAVELERS INDEMNITY COMPANY and American Motorists
Insurance Company, Defendants-Appellees.
The TRAVELERS INDEMNITY COMPANY, Third-Party Plaintiff-Appellee,
v.
EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company and National
Union Fire Insurance Company, Third-Party
Defendants-Appellees.
 No. 582, Docket 90-7613.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 14, 1990.
Decided Jan. 22, 1991.
Order Sur Petition for Panel
Rehearing March 13, 1991.
 
 Hugh N. Fryer (John P. Gasior, Fryer, Ross & Gowen, New York City, of counsel), for plaintiffs-appellants.
 Seth A. Ribner (Barry R. Ostrager, Robert P. O'Brien, Simpson Thacher & Bartlett, New York City, of counsel), for defendant-appellee, The Travelers Indem. Co.
 James M. Sweet (Paul McDonald, Drinker Biddle & Reath, Philadelphia, Pa., of counsel), for defendant-appellee, American Motorists Ins. Co.
 Before FEINBERG, TIMBERS and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Ogden Corporation ("Ogden"), Avondale Industries, Inc. ("Avondale"), and Connell Limited Partnership ("Connell") (collectively "Appellants") appeal from a summary judgment entered in the United States District Court for the Southern District of New York (Patterson, J.) dismissing their action to declare that defendants-appellees The Travelers Indemnity Company ("Travelers") and American Motorists Insurance Company ("AMICO") owed a duty to defend and indemnify Appellants in connection with an action brought by Bethlehem Steel Corporation ("Bethlehem") in the United States District Court for the Central District of California. In the California suit, Bethlehem sought reimbursement for the environmental cleanup of property it had leased to Appellants. The district court held that Travelers had no duty to defend or indemnify Appellants because the allegations in the Bethlehem amended complaint fell within the terms of Travelers' pollution exclusion clause, and that Appellants "failed to give AMICO timely notice of the possibility of a claim," such notice being a condition precedent for liability under its policy. Ogden Corp. v. Travelers Indem. Co., 739 F.Supp. 796, 798, 804 (S.D.N.Y.1989).
 
 
 2
 On appeal, Appellants contend that the allegations in the Bethlehem amended complaint do not preclude an interpretation consistent with the possibility that the discharges leading to the contamination on the leased property were both "sudden and accidental"; that the phrase "sudden and accidental" in the Travelers pollution exclusion clause should be interpreted to mean "unexpected and unintended"; and that the district court erred in finding that Appellants failed to satisfy the notice-of-occurrence provision in AMICO's insurance policy. For the reasons that follow, we affirm the judgment of the district court.
 
 BACKGROUND
 
 3
 On March 31, 1988, Bethlehem commenced an action in the United States District Court for the Central District of California against Luria Brothers & Company, Inc. ("Luria"), Connell and Avondale, seeking recovery of its costs in complying with a California Department of Health Services order to clean up hazardous substances from a site located in Vernon, California. Luria, a former subsidiary of Ogden, merged into Avondale, which subsequently sold the assets of Luria to Connell. Luria had leased the property from Bethlehem from 1950 to 1983 for the operation of a scrap metal processing and storage facility. The only allegation in the complaint relating to the release of hazardous substances on the leased property is as follows:
 
 
 4
 LURIA's scrap metal processing and storage operations, and LURIA's other industrial operations, on the subject property proximately caused hazardous substances to be released onto the subject property and contaminate the soil of the subject property. These hazardous substances include, but are not limited to, heavy metals (lead, zinc, and copper), hydrocarbons, and polychlorinated biphenyls ("PCBs"). BETHLEHEM is informed and believes, and thereon avers, that said contamination occurred continuously during the years 1950 through 1983.
 
 
 5
 On July 1, 1988, Bethlehem filed an amended complaint adding Ogden as a defendant and adding a new count clearly pleading a negligence claim.
 
 
 6
 On April 22, 1988, Luria notified Travelers and AMICO of the contamination at the Vernon site. On July 6, 1988, AMICO disclaimed any coverage obligation to the Appellants. Soon after, Appellants brought this action against Travelers and AMICO seeking a judgment declaring that they were entitled to a defense and indemnity in the Bethlehem action pursuant to the comprehensive general liability insurance policies issued by Travelers and AMICO.[1] On Appellants' motion for partial summary judgment and Travelers' and AMICO's cross-motions for summary judgment, the district court held that Travelers had no duty under its pollution exclusion clause to defend or indemnify Appellants. Ogden Corp., 739 F.Supp. at 798. The pollution exclusion clause excludes from coverage liability for pollution that is not "sudden and accidental." The court further held that AMICO's disclaimer of coverage was proper because Appellants "failed to give AMICO timely notice of the possibility of a claim." Id. at 804.
 
 
 7
 On June 5, 1990, after rehearing and reconsideration, the district court reaffirmed its earlier decision that Travelers had no duty to defend or indemnify Appellants. Ogden Corp. v. Travelers Indem. Co., 740 F.Supp. 963 (S.D.N.Y.1990).
 
 DISCUSSION
 
 8
 It is well-settled that an insurer's duty to defend "is derived from the allegations of the complaint and the terms of the policy." Technicon Elecs. Corp. v. American Home Assurance Co., 74 N.Y.2d 66, 73, 542 N.E.2d 1048, 1050, 544 N.Y.S.2d 531, 533 (1989); see EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co., 905 F.2d 8, 11 (2d Cir.1990); Avondale Indus. v. Travelers Indemn. Co., 887 F.2d 1200, 1204 (2d Cir.1989), reh'g denied, 894 F.2d 498 (2d Cir.) (per curiam), cert. denied, --- U.S. ----, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). Where the complaint contains allegations that bring the claim even potentially within the policy's coverage, the insurer is obligated to defend. Technicon, 74 N.Y.2d at 73, 542 N.E.2d at 1050, 544 N.Y.S.2d at 533. There is no duty to defend, however, if the insurer establishes that the " 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.' " Id. (quoting International Paper Co. v. Continental Cas. Co., 35 N.Y.2d 322, 325, 320 N.E.2d 619, 621, 361 N.Y.S.2d 873, 875 (1974)). Under the terms of its policy, Travelers would be obligated to defend if there were any indication in Bethlehem's complaint that "[the] discharge, dispersal, release or escape [of pollutants was] sudden and accidental."
 
 
 9
 On appeal, our review of a grant of summary judgment is de novo. Fed.R.Civ.P. 56(c); EAD Metallurgical, 905 F.2d at 10. Although the record must be examined in the light most favorable to the non-moving party, the non-movant must demonstrate that there are genuine issues of material fact in order to secure a reversal on appeal. Id. Appellants contend that, when viewed in the light most favorable to them, the allegations in the Bethlehem complaint may be interpreted as alleging a "sudden and accidental" discharge. However, in the complaint, Bethlehem alleged that the "contamination occurred continuously during the years 1950 through 1983." We agree with the district court that this allegation does not comport with the definition of "sudden" under New York law. For a release or discharge to be sudden, it must "occur[ ] over a short period of time." Technicon Elecs. Corp. v. American Home Assurance Co., 141 A.D.2d 124, 137, 533 N.Y.S.2d 91, 99 (2d Dep't 1988), aff'd, 74 N.Y.2d 66, 542 N.E.2d 1048, 544 N.Y.S.2d 531 (1989); see EAD Metallurgical, 905 F.2d at 11 (activity causing the release of pollutants from 1977 through 1983 was found to be "continuous"). Appellants' contention that there is a possibility that the contamination occurred over a short period of time must fail because it is contrary to the language of the Bethlehem complaint. A reasonable reading of the complaint leads to only one conclusion, namely, that the discharge occurred continuously over a thirty-three-year period.
 
 
 10
 The pollution exclusion clause also excludes from coverage discharges that are not accidental. Under New York law, the contamination of a site is accidental when the conduct, the activity resulting in pollution, was unintended. Technicon, 141 A.D.2d at 144, 533 N.Y.S.2d at 103; Powers Chemco, Inc. v. Federal Ins. Co., 74 N.Y.2d 910, 911, 548 N.E.2d 1301, 1302, 549 N.Y.S.2d 650, 651 (1989) (noting that pollution damage, "resulting from purposeful conduct, cannot be considered 'accidental' "). Bethlehem does not allege that the Appellants intentionally contaminated the leased property. Bethlehem claims that "Luria's ... operations ... proximately caused hazardous substances to be released ..." and that the "contamination occurred continuously during the years 1950 through 1983." It is doubtful whether the continuous discharge of pollutants resulting from the purposeful operation of a scrapyard can be construed as accidental. Technicon, 141 A.D.2d at 137, 533 N.Y.S.2d at 99; Powers Chemco, 74 N.Y.2d at 911, 548 N.E.2d at 1302, 549 N.Y.S.2d at 651. Because we agree that the allegation of continuous discharge of pollutants from 1950 through 1983 cannot be interpreted as an allegation of sudden discharge in any event, we need not consider whether or not the complaint alleges an accidental discharge. The sudden and accidental exception to the pollution exclusion clause applies only when the discharge is both "sudden and accidental." EAD Metallurgical, 905 F.2d at 9; Technicon, 141 A.D.2d at 144, 533 N.Y.S.2d at 103.
 
 
 11
 Appellants' argument that their insurers are obligated to defend because the amended complaint includes a specific claim of negligence, is unavailing in light of our finding that the pollution exclusion clause governs. Whether the complaint fairly can be read to allege intentional conduct or negligent conduct or both is relevant only for purposes of determining whether accidental contamination is pleaded. Because the complaint cannot be interpreted under New York law to contain an allegation of sudden contamination, it is unnecessary to analyze the allegations for the purpose of determining whether the conduct of Appellants falls within the meaning of "accidental." We repeat that the duty to defend arises only when a complaint alleges both a sudden and accidental release of pollutants. EAD Metallurgical, 905 F.2d at 9; Powers Chemco, 74 N.Y.2d at 911, 548 N.E.2d at 1302, 549 N.Y.S.2d at 651; Technicon, 74 N.Y.2d at 75, 542 N.E.2d at 1049, 544 N.E.2d at 533.
 
 
 12
 Because Travelers established that the "allegations of the complaint cast that pleading solely and entirely within [its] policy exclusion[ ]," International Paper Co., 35 N.Y.2d at 325, 320 N.E.2d at 621, 361 N.Y.S.2d at 875, we hold that the district court was correct in granting summary judgment to Travelers on the issue of its duty to defend. Since there is no duty to defend, there also is no corresponding duty to indemnify. Technicon, 141 A.D.2d at 144, 533 N.Y.S.2d at 104; EAD Metallurgical, 905 F.2d at 11.
 
 
 13
 AMICO contends that it was not notified in a timely manner. Relying on Autotronic Sys. v. Aetna Life & Cas., 89 A.D.2d 401, 456 N.Y.S.2d 504 (3d Dep't 1982), Appellants argue that New York law does not require notice to more than one insurer, where there have been multiple insurers over a period of time, unless it is readily apparent that the entire time period is implicated. Autotronic is inapposite, however. There, the insurer claimed that its insured failed to give prompt notice of the underlying suit rather than the occurrence. AMICO's defense is based upon untimely notice of the occurrence. The test for determining whether notice of occurrence must be given to a particular insurer "is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim [against that insurer]." Commercial Union Ins. v. International Flavors & Fragrances, Inc., 822 F.2d 267, 272 (2d Cir.1987); see Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 441, 293 N.E.2d 76, 78, 340 N.Y.S.2d 902, 906 (1972).
 
 
 14
 As previously noted, Appellants were informed that there was a possibility of a claim on July 25, 1985, when Bethlehem advised Appellants by letter that their operation of the scrapyard over three decades had resulted in environmental problems. It is fair to say that Bethlehem's letter of July 25 apprising Appellants of the situation should have alerted Appellants to notify their insurers upon receipt of that communication. Luria certainly was aware of the threat of litigation by June 27, 1986, when it forwarded a letter to Bethlehem disclaiming liability for the environmental damage. It should have communicated with its insurers the possibility, then clearly apparent, that a claim would be made against it. However, notification to AMICO was withheld until April 22, 1988.
 
 
 15
 We therefore consider Appellants' notification to AMICO nearly 2 1/2 years after Bethlehem informed them of the environmental problems on the Vernon site to be unreasonable under the circumstances. See Commercial Union Ins., 822 F.2d at 272. We have considered Appellants' other arguments and find them to be without merit.
 
 CONCLUSION
 
 16
 The judgment of the district court is affirmed.
 
 ORDER SUR PETITION FOR PANEL REHEARING
 
 17
 March 13, 1991.
 
 
 18
 The petition for rehearing filed by appellant in the above-entitled case having been submitted to the judges who participated in the decision of this Court, and no judge who concurred in the decision having asked for rehearing, and none of the members of the panel having voted for rehearing, the petition for rehearing is denied.
 
 
 
 [1]
 In addition, Travelers cross-claimed against AMICO and filed third-party complaints against Employers Insurance of Wausau ("Wausau") and National Union Fire Insurance Company ("National Union"), while National Union cross-claimed against Wausau. Wausau insured Appellants before AMICO had insured them and National Union insured Appellants after Travelers no longer insured them. On August 22, 1990, the district court dismissed without prejudice Travelers' cross-claims against AMICO, Travelers' third-party claims against Wausau and National Union, and National Union's cross-claim against Wausau