UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3557

_____

In Re: DELTA FINANCIAL CORPORATION, et al,
Debtors


DELTA FINANCIAL CORPORATION,
Appellant

v.

WESTCHESTER SURPLUS INSURANCE COMPANY;
UNITED STATES FIRE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 09-cv-00049)
District Judge: Honorable Joseph J. Farnan, Junior

_____

Submitted Under Third Circuit LAR 34.1(a)
April 15, 2010

Before: SLOVITER, HARDIMAN, *Circuit Judges* and POLLAK[*], *District Judge*.

(Filed: May 5, 2010)

_____

[*] The Honorable Louis H. Pollak, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

Delta Financial Corporation appeals from the judgment of the District Court affirming an order of the Bankruptcy Court granting motions for judgment on the pleadings filed by Westchester Surplus Insurance Company and United States Fire Insurance Company. Largely for the reasons explained by the Bankruptcy Court in its thorough opinion, we will affirm.

I.

A.

Because we write for the parties, who are familiar with the facts and procedural history, we recount only those aspects of the case that are essential to our decision.

Delta Financial and its directors and officers are insureds under directors and officers liability insurance (D&O) policies issued by Westchester, the primary insurer, and U.S. Fire, the excess insurer, (collectively, the Insurers). Delta Financial and its directors and officers sought coverage under the D&O policies after they were sued in New York state court (the Underlying Action) by Delta Funding Residual Exchange Co., LLC (Delta LLC) and Delta Funding Residual Management, Inc. (collectively, the Underlying Plaintiffs).

2

The Underlying Plaintiffs asserted a number of claims against Delta Financial, including breach of contract, fraud, negligent misrepresentation, and breach of fiduciary duty, following a debt restructuring transaction in 2001. According to the allegations in the Underlying Action, the transaction consisted of two parts. First, Delta Financial debt holders surrendered their unsecured notes and senior secured notes to Delta LLC, an entity formed solely to facilitate the transaction. In exchange, the note holders received certain interests in Delta LLC and its newly formed management company. Second, in exchange for Delta LLC's surrender of the notes, Delta Financial transferred to Delta LLC "excess cashflow certificates" that it valued at approximately $153 million. Delta Financial represented the value of the excess cashflow certificates and other assets transferred to Delta LLC would equal the outstanding balance of the surrendered notes.

In 2003, the Underlying Action was filed in state court. Therein the Underlying Plaintiffs alleged that the excess cashflow certificates transferred to Delta LLC were worth only $40 million at the time the restructuring transaction closed. After the Underlying Action was filed, Delta Financial immediately notified the Insurers and made a demand for defense costs and indemnification. The D&O policies contain a provision excluding claims "for Loss on account of any Claim made against any Insured: . . . based upon, arising out of, or attributable to the actual or proposed payment by the Company of allegedly inadequate . . . consideration in connection with the Company's purchase of

3

securities issued by any company" (the Inadequate Consideration Exclusion). The

Insurers denied coverage, primarily relying upon the Inadequate Consideration Exclusion.

B.

After reviewing the plain meaning of the terms in the Inadequate Consideration

Exclusion, the Bankruptcy Court concluded that the transfer of the excess cashflow

certificates to Delta LLC in exchange for the notes held by the Underlying Plaintiffs

constituted the actual payment by Delta Financial of inadequate consideration in

connection with Delta Financial's purchase of securities of any company. The

Bankruptcy Court also concluded that all of the claims in the Underlying Action "would

not exist 'but for' the closing of the [2001] restructuring transaction," thereby precluding

coverage and requiring dismissal of Delta Financial's complaint against the Insurers. *In

re Delta Financial Corp.*, 398 B.R. 382, 400 (Bankr. D. Del. 2008). The District Court

affirmed the order of the Bankruptcy Court, and Delta Financial filed this timely appeal.[1]

II.

"Inasmuch as the District Court was sitting as an appellate court, we essentially are

reviewing the Bankruptcy Court's order of dismissal." *In re Plassein Int'l Corp.*, 590

F.3d 252, 256 (3d Cir. 2009). We review such an order *de novo*. *Id.*

---

[1] The Bankruptcy Court had jurisdiction over the adversary proceeding under 28
U.S.C. § 157, and the District Court had jurisdiction to review the order under 28 U.S.C.
§ 158(a). We have jurisdiction to hear the appeal under 28 U.S.C. § 158(d)(1).

Delta Financial argues that the Bankruptcy Court misapplied New York law in its construction of the Inadequate Consideration Exclusion and failed to hold the Insurers to their heavy burden when invoking an exclusion to insurance coverage. Delta Financial also contends that the allegations in the Underlying Action do not fall "solely and entirely" within the Inadequate Consideration Exclusion and that the Bankruptcy Court erred in concluding that the second cause of action in the Underlying Action would not have arisen but for the excluded conduct. We find Delta Financial's arguments unpersuasive.

A.

A review of the Bankruptcy Court's opinion shows that the Court properly identified the controlling New York law concerning interpretation of insurance contracts and applied those principles to the Inadequate Consideration Exclusion and the Underlying Action. While it is true that insurers bear a heavy burden when invoking an exclusion, *see Technicon Electronics Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 73-74 (N.Y. 1989) ("when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation'"), we hold that the Insurers have met their substantial burden in this case.

First, the Bankruptcy Court's reliance on dictionary definitions to identify the plain meaning of the terms of the Inadequate Consideration Exclusion was proper. *See Rosner v. Metro. Prop. and Liab. Ins. Co.*, 754 N.E.2d 760, 762-63 (N.Y. 2001) ("dictionary definitions [provide] 'useful guideposts' in determining the meaning of a word or phrase") (citation omitted); *Riggs v. Blue Cross of W. New York, Inc.*, 460 N.Y.S.2d 677, 678-79 (N.Y. App. Div. 1983) (consulting dictionary to determine plain meaning of term in insurance exclusion provision); *Am. Home Assurance Co. v. Levy*, 686 N.Y.S.2d 639, 649 (N.Y. Sup. Ct. 1999) (same). Moreover, the Inadequate Consideration Exclusion is not ambiguous in this case. Delta Financial has neither suggested an alternative, narrower meaning of the exclusion, nor pointed to any relevant extrinsic evidence of the parties' actual intent with respect to the Inadequate Consideration Exclusion. *Cf. Nat'l Football League v. Vigilant Ins. Co.*, 824 N.Y.S.2d 72, 36 A.D.3d 207, 214 (N.Y. App. Div. 2006) (holding that language of exclusion did not "clearly and unambiguously indicate that it extended" to the underlying claims at issue where the alternative interpretation of the exclusion provided by the insured was not shown to be unreasonable). Accordingly, we perceive no error in the Bankruptcy Court's analysis in this regard.

B.

Delta Financial next argues that the allegations of the Underlying Plaintiffs do not fall "solely and entirely" within the Inadequate Consideration Exclusion because those allegations are subject to a reasonable interpretation outside of the exclusion.

6

Specifically, Delta Financial argues that the allegations concerning the 2001 restructuring transaction can be interpreted as a discharge of debt via a strict foreclosure on the excess cashflow certificates by the note holders, citing N.Y. U.C.C. §§ 9-620 and 9-622. We disagree that the allegations in the Underlying Action could be construed as a strict foreclosure under U.C.C. § 9-620 because the allegations are inconsistent with such a transaction. First, as noted by Westchester, § 9-620 requires (a) a default by the borrower with respect to the debt, (b) foreclosure against the assets that secured the debt, and (c) physical possession of the collateral by the creditors. None of these elements is alleged by the Underlying Plaintiffs. Furthermore, there is no allegation that any of the procedural requirements of N.Y. U.C.C. §§ 9-620 or 9-621 were followed with respect to the 2001 restructuring transaction. Finally, the Underlying Plaintiffs allege that they surrendered both secured and unsecured notes to Delta Financial in exchange for ownership interests in Delta LLC. But, the *unsecured* note holders could not have been foreclosing on collateral. In light of these omissions and inconsistencies, the allegations of the Underlying Action cannot reasonably be interpreted as a strict foreclosure on the notes' collateral as argued by Delta Financial.

## C.

Lastly, Delta Financial claims the Bankruptcy Court erred in finding that the second cause of action in the Underlying Action was excluded under the "but for" test, because "[t]hat claim could have been brought, and damages recoverable, regardless of

7

what the Cashflow Certificates and other assets were worth at the time of the exchange." Delta Financial Br. at 52. Delta Financial cites, as evidence that the second cause of action is unrelated to the excluded conduct, the fact that the Underlying Plaintiffs seek only $500,000 in damages under the second cause of action, whereas they seek $110 million in damages throughout the remainder of the complaint.

In the second cause of action, the Underlying Plaintiffs allege that Delta Financial breached the Management Agreement by failing to timely notify Delta LLC that Delta Financial had devalued comparable cashflow certificates on its own books. The fact that the Underlying Plaintiffs seek a different amount of damages under the second cause of action does not negate that the cause of action arises only "but for" the excluded conduct. Had Delta Financial not transferred cash flow certificates to Delta LLC worth $110 million less than their represented value in exchange for the notes (the excluded conduct), then it would not have been necessary for Delta Financial to inform Delta LLC of the devaluation of similar certificates several months later. Thus, the Underlying Plaintiffs' second cause of action, like their other claims, arose from the same "actual . . . payment by the Company of allegedly inadequate . . . consideration in connection with the Company's purchase of securities issued by any company" and was properly excluded from coverage under the D&O policies.

III.

For the foregoing reasons, we will affirm the order of the District Court.

8